Judge Mills
delivered the Opinion of the Court,
Carter T. Wood filed his hill against Henry K. Lewis, asserting his lien for the purchase money due him for two tracts of land, sold and conveyed by him to Lewis, no part of the price of which was paid, and only secured by promissory-notes.
The Bank of Kentucky also filed a bill to foreclose a mortgage on the same lands, given to them by Lewis, to secure a debt due to them for an accommodation.
Pending these suits, Wood amended his bill, making the Bank a party, and claiming that his lien, was prior in date to that of the bank, and ought to be preferred; and also that the bank had notice that his purchase money was not paid, and that his lien existed before the mortgage was taken.
The hank answered this amendment, denying notice of the lien of Wood, and contending for the su», periority of their lien.
At the hearing, the court below dismissed the bill of Wood, as to all the parties, with costs. From this decree Wood has appealed to this court.
Wood showed beyond contradiction, that the whole of his purchase money was due from Lewis, and that the acquisition of title from him by Lewis, •was a piece of swindling, whereby his'title was gotten from him, for the purpose of securing the bank, who was then a pressing creditor of Lewis. By creating a new debt to Wood, and procuring his title, fair on its face, he was enabled to quiet for a time an old one, then like to fall on him with its consequences, and at the time, being a merchant, he was in a sinking condition, and soon became insolvent. Wood was pressed at the time with debt, and his object in selling, was to relieve himself from his’ *195 embarrassment, and Lewis gave to him his obligation to pay his debts, and the same day, after receiving the title, mortgaged it to the bank.
Lien of mortgagee without notice of a purchase on credit, who had obtained the conveyance, has the preference of the lien of thp vendor, for the purchase money.
In such case, the condition, of the mortgagee is that of a parchas.er, having the legal advantage of the title.
Payment of the consideration acknowledged in the deed.
Part of the land conycy ed had been previously sold.
It has been contended that the bank, being only a mortgagee, cannot stand in the place of a purchaser without notice; but that equity will treat their claim under the mortgage only as a pledge, and the equity arising thereupon, will stand and be counted only from its date, when it struggles with other liens. This cannot be admitted. The lien of Wood is purely equitable, and has no remedy in a court of law. The lien of the bank is not only equitable but legal, and if both claims are equally fair and innocent, between their equality, the law, according to a well known principle, must prevail without regard to the age of either. It is on this ground, that subsequent purchasers for a valuable consideration, having completed their purchases, prevail over prior equities. If the purchase is fair, each have equal merit, and the question is on whom the loss must fall, and this is determined in favor of the legal estate.
This case must then be decided by the fact of notice or no notice to the bank, before the mortgage was accepted.
It is contended by Wood, that as his deed to Lewis, does not express a consideration on its face, paid in gross; but only the price of fifteen dollars per acre in hand paid, it communicated the knowledge that the claim had never been liquidated. It is admitted that if the deed did contain any information that any part of the consideration was due, it would bind the bank as constructive notice, whether it had or had not escaped attention. But by a recurrence to the subsequent language of the deed, the quantity of acres is definitively fixed, and an easy calculation fixed the gross sum, and therefore this point fails.
It is also urged that in the deed, by mistake, one hundred acres rvas included, which had been previously sold by Wood to a Mr. Caldwell, and that this fact, of a previous sale of this part to Caldwell, was known to some of the officers and agents of the *196 bank, when the mortgage was accepted, and that this rendered the price or consideration expressed on the face of the deed from Wood unliquidated. The proof does show that this quantity was previously sold to Caldwell, find that one of the officers of the bank kneW at the time, that the same piece was included in the conveyance' from Wood to Lewis. But although this knowledge might give to Caldwciil the priority in á controversy between him and the bank; it is not perceived how it can aid Wood as to his lien. It did not render the consideration expressed in his deed to Lewis uncertain and Unliquidated. Retain this hundred acres, or deduct it, and still the whole price at fifteen dollars per acre, is as easily ascertained in one case as the other..
Evidence that the president of the bank knew Lowis was in4 solvtinl.
Recent dato of a conveyance of land, after the return of a fieri facias against grant- or, no estate found', is not evidence that the consideration money is not paid, and so notice to a subsequent purchaser.
*196 It is further contended that by the return on some two or three executions made by the sheriff to the clerk’s office of the circuit court of the county, before the date of the conveyances from Wood to Lewis, and from Lewis to the bank, it appeared that Lewis was insolvent, and that thdse returns of the Sheriff were recorded by the clerk of the court in his own hand writings and that the clerk was also the President of the branch bank at Hopkinsville, who was actively engaged in procuring the mortgage from Lewis. It is therefore argued that the knowledge of the fact of Lewis’ insolvency j repelled every inference that could have been drawn in favor of the fact, asserted on the face of the conveyance from Wood to Lewis, that the purchase money was actually paid. For it could not be supposed that Lewis, should, just before lie executed the mortgage have purchased the estate from Wood, and paid the whole of the price, when he had not the means of payment by reason of insolvency.
This admits of two answers» it does not folkiw, that a man returned insolvent on a fieri facias, has no money in his pocket, which the Sheriff cannot reach by execution, especially such a character as Lewis, then a merchant in business, whose capital is frequently inaccessible to a writ of fieri facias. But the strongest answer is, it appears in proof that Lewis and Wood had made their bargain for tide *197 land, long before the day on which Wood conveyed to Lewis, and Lewis to the bank, and Wood had gone so far as to deliver to Lewis a conveyance for the land, several months previously, which was never attested by witnesses or acknowledged for re - ord, and these facts were known clearly to the same clerk of the circuit court and president of the bank, who was employed in taking the conveyance of mortgage from Lewis i It was therefore reasonable that he should concludes when he saw the conveyance just made by Wood to Lewis, and properly acknowledged for record, that Lewis had just completed his payment and purchase from W ood. We are unwilling to establish the principié that the recent date of the conveyance alone should, per se, put a purchaser from the grantee, on the search of liens for the purcháse money, when it L well known that titles are frequently retained as security for the purchase money, and the conveyance is, in truth and in fact, often the last act, after all the purchase money is discharged.
[^e bank.
Captious obi^nced.
In a bill aofKen túcky°theoffleers of the bank noi proper parties, and on»ht (.o be dismissed on demurrer.
*197 We therefore conclude, that none Of the dr cum-stances relied on by Wood as conveying notice to the bank, or any of its agents, are sufficient, and that however hard his fate may be, the lien of the bank must he preferred to his. There is no other testimony conducing to prove notice-.
But we do not accord with thé court below, in dismissing the bill and affording tb Wood no redress, and for doing so the decree must he reversed.
In coming té this conclusion, wé do not rely upon, and shall not notice many of the exceptions taken by the counsel of Wood, in the progress of the cause in the court below, to the opinions of that Court. Most, if not all of them; appear both captious and groundless, and for the credit of the profession, they had better be omitted.
We do not say that it was erroneous to dismiss the bill as to the president and directors of the Hopkinsville branch bank, who were introduced into the cause as defendants by name. They Were not the corporate body against whom the suit was *198 brought. Individually they had no interest in the ease. These answers could not have operated against the bank, and would not be evidence against other defendants, so that the complainant could have made more use of them as witnesses than defendants, and they stood more properly in the former situation than the latter. They tried to get out of the cause by a demurrer to the bill, and ought to have been dismissed in that way, but were retained by the court below, till some of them were compelled to answer again and again. It could not, therefore, bo error to dismiss tbein at tlie last, when they were entitled long before to a release from the cause.
Vendor may maintain bis bill to subject the land conveyed, to the payment of the purchase money — aud
—W hero, in such ease, the land has been mortgaged by vendee, and the mortgagee having no notice,has the prior lien, the land shall bo sold, and the proceeds appropriated first to mortgagee’s demand, the balance, if any,to vendor's claim.
But as to Lewis and the bank, the dismissing of the bill cannot be supported. This was a contract for land, and the right of Wood to tlie purchase money, never bad been determined in a court of law. As the chancellor had jurisdiction of such a contract to enforce tlie lien-, it might retain it throughout, and decree against Lewis the amount of the purchase money, to which Wood has a strong claim. Tricked Out of his estate, which is now-placed beyond liis grasp, lie lias a double claim to his purchase money, and the dismissing the bill as to that, may forever deprive him of all hope of getting any thing from Lewis, by placing a bar in liis road, when his right to recover is clear.
As to the bank, the dissmissing the bill is not more correct. We have seen that bis lien must be postponed to that of the bank; but it is not entirely lost. He is entitled to be satisfied out of the residue, if there is more than will satisfy the bank, which cannot be known till a sale is made The court ought therefore, to have retained his bill and tried it with that of the bank, and on a final hearing to have decreed the sale of tlie estate, by virtue of his lien, as well as that of the bank, and decided as to whom tlie preference should be given, by directing tlie appropriation of the proceeds.
The decree dismissing the bill as to the president and directors of the Hopkinsville branch must bo affirmed. But as to the Bank of Kentucky, and Lewis, the decree must be reversed with costs, and *199 the cause is remanded for such a decree to be rendered, and proceedings had, as may not be inconsistent with this opinion, and .the equity of the case.
Mayes and Denny, for appellants; Crittenden, for appellees.